GREAT HILL EQUITY PARTNERS IV, LP, Great Hill Investors LLC, Fremont Holdco, Inc., and BlueSnap, Inc. (f/k/a Plimus), Plaintiffs,

v.

SIG GROWTH EQUITY FUND I, LLLP, SIG Growth Equity Management, LLC, Amir Goldman, Jonathan Klahr, Hagai Tal, Tomer Herzog, Daniel Kleinberg, Irit Segal Itshayek, Donors Capital Fund, Inc., and Kids Connect Charitable Fund, Defendants.

Civil Action No. 7906–CS.

Court of Chancery of Delaware.

Submitted: Oct. 15, 2013.
Decided: Nov. 15, 2013.

Gregory V. Varallo, Esquire, Rudolf Koch, Esquire, Thomas A. Uebler, Esquire, Robert L. Burns, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Stephen D. Poss, Esquire, Kathryn L. Alessi, Esquire, Adam Slutsky, Esquire, Goodwin Procter LLP, Boston, Massachusetts, Attorneys for Plaintiffs Great Hill Equity Partners IV, LP, Great Hill Investors LLC, Fremont Holdco, Inc., and BlueSnap, Inc. (f/k/a Plimus).

David J. Margules, Esquire, Bouchard Margules & Friedlander, P.A., Wilmington, Delaware, Attorneys for Defendants SIG Growth Equity Management, LLC, SIG Growth Equity Fund I, LLLP, Amir Goldman, Jonathan Klahr, Donors Capital Fund, Inc., Kids Connect Charitable Fund, Daniel Kleinberg, and Tomer Herzog.

David S. Eagle, Esquire, Sean Brennecke, Esquire, Klehr Harrison Harvey Branzburg LLP, Wilmington, Delaware, Attorneys for Defendants Hagai Tal and Irit Segal Itshayek.

## OPINION

STRINE, Chancellor.

The plaintiffs, Great Hill Equity Partners IV, LP, Great Hill Investors LLC,

Fremont Holdco, Inc., and BlueSnap, Inc. (for clarity, collectively the "Buyer"), have filed this suit alleging that the defendants, former shareholders and representatives of Plimus, Inc. (for clarity, collectively the "Seller"), fraudulently induced the Buyer to acquire Plimus, Inc. ("Plimus") in September 2011. Plimus was the surviving corporation in the merger.

After the Buyer brought this suit in September 2012—a full year after the merger—it notified the Seller that, among the files on the Plimus computer systems that the Buyer acquired in the merger, it had discovered certain communications between the Seller and Plimus's then-legal counsel at Perkins Coie regarding the transaction. During that year, the Seller had done nothing to get these computer records back, and there is no evidence that the Seller took any steps to segregate these communications before the merger or excise them from the Plimus computer systems, the control over which was passing to the Buyer in the merger. It is also undisputed that the merger agreement lacked any provision excluding pre-merger attorney-client communications from the assets of Plimus that were transferred to the Buyer as a matter of law in the merger, and the merger was intended to have the effects set forth in the Delaware General Corporation Law ("DGCL").[1] Nonetheless, when the Seller was notified that the Buyer had found pre-merger communications on the Plimus computer system, the Seller asserted the attorney-client privilege over those communications on the ground that it, and not the surviving corporation, retained control of the attorney-client privilege that belonged to Plimus for communications regarding the negotiation of the merger agreement. Before the court is a motion by the Buyer seeking to resolve this privilege dispute and determine, among other things, that the surviving corporation owns and controls any pre-merger privilege of Plimus or, alternatively, that the Seller has waived any privilege otherwise attaching to those pre-merger communications.[2]

■■■■■ The question before the court is thus an issue of statutory interpretation in the first instance. Section 259 of the DGCL provides that following a merger, "all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation...."[3] Nonetheless, the Seller contends that the statutory term "all ... privileges" does not include the attorney-client privilege, and claims that the Seller still retains control over that particular subset of Plimus's privileges, or, as shall be seen, at least the portion of that subset consisting of attorney-client communications regarding the merger negotiations.

---

1. Plimus was a California corporation, and the Buyer was a Delaware corporation. Thus, the Merger Agreement provided that "[t]he Merger shall have the effects set forth in this Agreement and in the applicable provisions of the DGCL and the [California General Corporation Law ("CGCL")]."). Merger Agreement § 2.02, Effects of the Merger. The Buyer has represented that the CGCL "effectively follows" the DGCL on this point, see Oral Arg. Tr. 6:13–15, and the Seller has not argued that the result would be different under the CGCL. Section 12.07 of the Merger Agreement also provided that "[a]ll disputes, controversies, issues and questions concern-ing the construction, validity, interpretation and enforceability of this Agreement ... shall be governed by and construed in accordance with the Laws of the State of Delaware...."

2. The Buyer also argued that the Seller's privilege log was inadequate, and that the documents in dispute should be reviewed by a Master to determine whether the crime-fraud exception to attorney-client privilege would apply.

3. 8 *Del. C.* § 259.

At oral argument, the Seller suggested without citation that the General Assembly actually intended the "privilege" referred to in § 259 of the DGCL to include only certain property rights, and that it did not extend to privileges established by a rule of evidence.[4] But, when asked, the Seller was not able to cite any legislative history that supported its narrow reading of the statute,[5] and the court has not been able to find any evidence for its suggested interpretation in the leading treatises.[6] Most importantly, the Seller's reading is not a plausible interpretation of the plain statutory language. That language uses the broadest possible terms to make sure that "all" assets of any kind belong to the surviving corporation after a merger. The Seller's attempt to interpret the word "privileges" to mean "property rights" ignores the reality that the word "property" is already specifically used in the statute, as is the term "rights"—and then these terms are expanded still further to include

4. Oral Arg. Tr. 64:8–17 ("I think we have to look at whether [§ ] 259(a) is really talking about the same kind of privilege that we're talking about here. It talks about property rights.... I don't think it's talking about a rule of evidence, which is what the attorney-client privilege is."); Oral Arg. Tr. 66:5–12 ("An easement ... A privilege to use land, for example, is something that belongs and can be sold, belongs to the property rights. That is a—that has often been defined as a privilege. A use of a copyright has often been defined as a privilege. And, therefore, what I think the statute might be talking about is those kind of privileges.").

5. Oral Arg. Tr. 65:15–20.

6. *See, e.g.*, R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 9.26, *Effects of Merger* (2013) ("Section 259(a) further provides for the transfer, as a matter of law, to the surviving or resulting corporation of *all* of the 'rights, *privileges*, powers and franchises as well of a public as of a private nature' ...") (emphasis added); DAVID A. DREXLER, LEWIS S. BLACK, JR. & A. GILCHRIST SPARKS, III, DELAWARE CORPORATION LAW AND PRACTICE § 35.07, *Effect of Merger on Rights and Liabilities of Constituent Corporations* (2009) (noting that "[t]he property passing to the surviving corporation also includes contractual rights and other choses in action, as well as *any* 'privileges, powers and franchises as well a public as of a private nature' ") (emphasis added); EDWARD P. WELCH, ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 259.2 (5th ed. 2008), *Survival of rights of a constituent corporation* ("The concept of continuing the life, but not the separate identity, of the merged corporation finds statutory expression in the provision that the new or surviving corporation 'possess[es] *all* the rights, *privileges*, powers and franchises as well of a public as of a private nature' previously belonging to or enjoyed by the constituent corporation. In a merger or consolidation, *all* rights of the constituent corporation are transferred to the surviving corporation by operation of law ...") (emphasis added); *see also* 19 C.J.S. CORPORATIONS § 909, *Succession to rights, privileges, and property* (2013) ("The usual effect of a consolidation or merger is that the new corporation succeeds to the rights, powers, *privileges* and immunities of each of the original corporations, except as provided by the limitations of the new corporation's charter.... The new corporation takes the rights, powers, *privileges*, and immunities of the constituent corporations.") (emphasis added); 15 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 7095, *Exemptions and immunities passing to new company* (2013) (noting that "[t]he modern corporation statutes in a number of jurisdictions expressly provide that, upon a statutory merger or consolidation, the surviving or new corporation shall thereupon and thereafter possess *all* the rights, *privileges*, immunities and franchises, both of a public as well as of a private nature, of each of the merging or consolidating corporations" and citing 8 *Del. C.* § 259 as an example) (emphasis added).

One treatise expressly declares that "[u]nder a provision giving a consolidated corporation the rights, franchises, privileges and property of the consolidating corporations, or without such a provision, and in the absence of provision to the contrary, the consolidated corporation acquires ... the absorbed corporation's attorney-client privilege." 15 FLETCH-

"all and every other interest." The definition of "all" is well known, and means "the whole amount, quantity, or extent of." [7] There is a presumption that the General Assembly carefully chose particular language when writing a statute, and this court will not construe the statute to render that language mere surplusage if another interpretation is reasonably possible.[8] The term "privilege" is commonly defined as "a right or immunity granted as a peculiar benefit, advantage, or favor,"[9] and one of the most obvious examples is the attorney-client privilege.[10] To indulge the Seller's argument would conflict with the only reasonable interpretation of the statute, which is that *all* means *all* as to the enumerated categories, and that this includes *all* privileges, including the attorney-client privilege.

In the face of the statutory language, the Seller cites to two cases in support of its argument, which it claims stand for the proposition that the former stockholders of a selling corporation retain the selling corporation's privileges as to any attorney-client communications regarding the negotiation of the merger.[11] In particular, the Seller relies on a decision of the New York Court of Appeals, *Tekni–Plex, Inc. v. Meyner & Landis*, which dissected the privileges belonging to a Delaware corporation that was sold in a merger into two categories, and held that only one category, *i.e., less than all*, passed to the surviving corporation in the merger.[12] *Tekni–Plex* held that the privilege over attorney-client communications regarding general business operations did pass to the surviving corporation in the merger.[13] But then the Court of Appeals innovated and, without citing § 259 of the DGCL, concluded that the pre-merger attorney-client communications regarding the merger negotiations did not pass to the surviving corporation for policy reasons related to its analysis of New York attorney-client privilege law.[14] The Seller also cites *Postorivo*

ER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 7089, *Powers and rights acquired* (2013).

7. Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/all (last visited Nov. 14, 2013).

8. *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del.2011); *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del.1994).

9. Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/privilege (last visited Nov. 14, 2013); *see also* BLACK'S LAW DICTIONARY 1234–35 (8th ed. 2004) (defining "privilege" as "[a] special legal right, exemption, or immunity granted to a person or class of persons, an exception to a duty," or "[a]n evidentiary rule that gives a witness the option to not disclose the fact asked for, even though it might be relevant; the right to prevent disclosure of certain information in court, esp. when the information was originally communicated in a professional or confidential relationship" and listing the "attorney-client privilege" as an example).

10. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (stating that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law"); *Union Carbide Corp. v. Dow Chem. Co.*, 619 F.Supp. 1036, 1046 (D.Del. 1985) (noting that the attorney-client privilege "dates back to the 16th century").

11. *Postorivo v. AG Paintball Holdings, Inc.*, 2008 WL 343856 (Del.Ch. Feb. 7, 2008); *Tekni–Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663 (1996).

12. 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663, 670 (1996).

13. *Id.* 651 N.Y.S.2d 954, 674 N.E.2d at 670–71.

14. *Id.* 651 N.Y.S.2d 954, 674 N.E.2d at 671–72 (noting that the decision was made "[i]n light of the facts of this particular transaction and the structure of the underlying agreement").

*v. AG Paintball Holdings, Inc.*, a decision of this court that applied *Tekni–Plex*.[15] But in *Postorivo*, the court did not take a stand on whether *Tekni–Plex* would be correct *under Delaware law*, because it was not necessary to do so under the facts of that case. There, the court was applying New York law to an asset purchase agreement that excluded certain assets,[16] rather than a merger that included all assets, and the parties had agreed that under the specific contractual terms of their transaction, the seller retained the attorney-client privilege over communications relating to the negotiation of the transaction.[17] Thus, as was the case in *Tekni–Plex*, *Postorivo* did not even cite § 259 of the DGCL.

The Buyer answers the Seller's arguments about these cases with a dispositive response: it points out that the General Assembly's statutory determination leaves no room for judicial improvisation.[18] The Buyer contends that under the plain terms of § 259 of the DGCL, the attorney-client privilege—like all other privileges—passes to the surviving corporation in the merger as a matter of law.[19] Thus, the Buyer argues, this court must enforce the statute. The court agrees. If the General Assembly had intended to exclude the attorney-client privilege, it could easily have said so.[20] Instead, the statute uses the broadest possible language to set a clear and unambiguous default rule: *all privileges* of the constituent corporations pass to the surviving corporation in a merger. Tellingly, the Seller admits that the attorney-client privilege has transferred to the surviving corporation for at least some purposes, and the Seller conceded at oral argument that the surviving corporation would, in fact, be able to access and use these same documents if it was necessary

---

15. 2008 WL 343856 (Del.Ch. Feb. 7, 2008).

16. *Id.* at *2 (describing the terms of the asset purchase agreement and noting that " § 12.8 of the [asset purchase agreement] provides that [it] is governed by New York law.").

17. *Id.* at *1 (noting the parties' agreement).

18. *Ross v. State*, 990 A.2d 424, 428 (Del. 2010) ("The role of the judiciary in interpreting a statute is to determine and give effect to the legislature's intent. When the intent is reflected by unambiguous language in the statute, the language itself controls. In that instance, a court must apply the statutory language to the facts of the case before it.") (internal citations omitted); *Rubick v. Sec. Instrument Corp.*, 766 A.2d 15, 18 (Del.2000) ("If the statute is unambiguous, there is no room for interpretation, and the plain meaning of the words controls."); *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del.1985) (noting that where a statute is unambiguous, "the Court's role is then limited to an application of the literal meaning of the words.").

19. *See* Oral Arg. Tr. 112:14–18 ("The statute clearly is intended to say that the entirety of the ball of rights, everything that the law recognizes is a right [was sold], period, full stop; and you would have to be putting an asterisk on the statute to get there."). The Buyer also points to Delaware Rule of Evidence 502, which explicitly contemplates that the attorney-client privilege may pass to a corporation's successor, for additional support of this interpretation, because no evidence of a carve out appears there either. *See* Del. R. Evid. 502(c) ("The privilege under this rule may be claimed by ... the successor, trustee or similar representative of the corporation.").

20. *See Fid. & Deposit Co. of Md. v. State Dep't of Admin. Servs.*, 830 A.2d 1224, 1228–29 (Del.Ch.2003) (refusing to "impos[e] an additional term upon the statute that was not put in place by the legislature" because "[t]he legislature was clearly capable of articulating exacting requirements" if it wanted to do so); *see also State v. Cooper*, 575 A.2d 1074, 1075–76 (Del.1990) (noting that "the language of the statute must be regarded as conclusive of the General Assembly's intent.").

to defend itself against a third party.[21] But this concession means that the Seller, like the Court of Appeals in *Tekni–Plex*, is not allowing the surviving corporation to receive "all" of the "privileges" of Plimus in the merger, but only the subset that the judiciary has deemed acceptable to transfer. Thus, "all ... privileges" in § 259 of the DGCL would become "all ... privileges, minus judicially-created exceptions." Whatever the case may be in other states, members of the Delaware judiciary have no authority to invent a judicially-created exception to the plain words "all ... privileges" and usurp the General Assembly's statutory authority.[22]

The Seller claims that giving effect to § 259 of the DGCL will create serious public policy issues.[23] But, as has long been recognized by the Delaware Courts, when the General Assembly has addressed an issue within its authority with clarity, there is no policy gap for the court to fill.[24] If a valid statute is not ambiguous, the court will apply the plain meaning of the statutory language to the facts before it.[25] It would usurp the authority of our elected branches for this court to create a judicial exception to the words "all ... privileges" for pre-merger attorney-client communications regarding the merger negotiations. That sort of micro-surgery on a clear statute is not an appropriate act for a court to take.

Of course, parties in commerce can— and have—negotiated special contractual agreements to protect themselves and prevent certain aspects of the privilege from transferring to the surviving corporation in the merger. The Buyer submitted several excerpts from private company merger transactions that contained provisions excluding pre-merger attorney-client communications regarding the negotiation of the transaction from the assets to be transferred to the surviving corporation and explicitly acknowledging that the attorney-client privilege for those documents would belong solely to the seller after the merger.[26] Furthermore, one of the cases cited

21. *See* Oral Arg. Tr. 71:22–72:5; Oral Arg. Tr. 72:13–15.

22. *See, e.g., In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del.1993) ("[O]ur role as judges is limited to applying the statute objectively and not revising it."); *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del.1982) ("The courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature.").

23. Def's. Opp'n. Br. at *18–19 (citing *Tekni–Plex* to argue that this outcome "would significantly chill attorney-client communication during the transaction" and would therefore defeat the purpose of the attorney-client privilege).

24. *See, e.g., In re Adoption of Swanson*, 623 A.2d 1095, 1099 (Del.1993) ("It is beyond the province of courts to question the policy or wisdom of an otherwise valid law. Instead, each judge must take and apply the law as they find it, leaving any changes to the duly elected representatives of the people.") (inter-

nal citations omitted); *Pub. Serv. Comm'n of State of Del. v. Wilmington Suburban Water Corp.*, 467 A.2d 446, 451 (Del.1983) (recognizing "the well-established principle that if an otherwise valid statute causes or leads to an inequitable result, then it is the sole province of the legislature to correct it."); *In re Vandyke's Estate*, 136 A. 147, 148 (Del.Orph.1927) ("If the policy of the statute is wrong, the Legislature is the only place where relief against it may be obtained.").

25. *See Sussex Cnty. Dep't of Elections v. Sussex Cnty. Republican Comm.*, 58 A.3d 418, 422 (Del.2013) ("If we determine that a statute is unambiguous, we give the statutory language its plain meaning."); *see also Moore v. Chrysler Corp.*, 233 A.2d 53, 55 (Del.1967) ("Words in statutes must be given their common and ordinary meanings.").

26. Letter from Counsel for the Buyer to the Court of Chancery (Sept. 27, 2013) (enclosing excerpts from three private company transactions).

by the Seller demonstrates that parties already know how to protect themselves from this situation. In *Postorivo*, the transactional agreements specifically retained the attorney-client privilege for communications regarding the negotiation of the transaction, so that particular element of the privilege did not pass to the surviving corporation as an incident of the sale.[27] The question in that case, rather, was whether a selling party that *had* contractually negotiated to retain the privilege waived the rights it had preserved by contract through its failure to take steps to ensure that the privileged information did not actually pass into the possession of the buyer.[28]

Notably, in the immediate wake of *Postorivo* and *Tekni–Plex*—and before the parties began negotiating this transaction—several articles were written encouraging practitioners to take privilege issues into account when negotiating a merger agreement.[29] Well before *Tekni–Plex*, the

United States Supreme Court had uttered these plain words:

> "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, *merger,* loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." [30]

Thus, the answer to any parties worried about facing this predicament in the future is to use their contractual freedom in the manner shown in prior deals to exclude from the transferred assets the attorney-client communications they wish to retain as their own.[31] Here, by contrast, the

---

27. *Postorivo*, 2008 WL 343856, at *6 n. 25 ("Section 1.2(h) [of the asset purchase agreement] provides that 'Excluded Assets' from the sale include 'all rights of the Sellers under this Agreement and all agreements and other documentation relating to the transactions contemplated hereby.' ").

28. *Id.* at *4 n. 13.

29. *See* Henry Sill Bryans, *Business Successors and the Transpositional Attorney–Client Relationship*, 64 Bus. Law. 1039, 1046 (2009) (noting that "*Tekni–Plex* was a wake-up call for transactional lawyers" and concluding that "drafting against a contrary result may be prudent"); M & A Jurisprudence Subcommittee, Mergers and Acquisitions Committee, ABA Section of Business Law, *Annual Survey of Judicial Developments Pertaining to Mergers and Acquisitions*, 64 Bus. Law. 433, 463 (2009) ("The *Postorivo* decision highlights the importance of addressing attorney-client privilege ownership issues in an acquisition agreement, regardless of whether the acquisition is structured as an asset transaction, a

merger, or a sale of stock."); Russell C. Silberglied, *Who Owns Privileged E–Mails in A S363 Sale Case? Is Ownership Waived When the Debtor's Computer Servers Are Sold?*, 28–Feb Am. Bankr.Inst. J., 46, 77 (2009) ("While *Postorivo* is one of the first cases addressing who owns the privilege in these scenarios, it will not be the last.... [C]ounsel should strongly consider addressing these points in the asset-purchase agreement. Indeed, who will retain the privilege ... should be a part of most "checklists" in negotiating an asset purchase agreement.").

30. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (emphasis added).

31. *See, e.g.,* John T. Hundley, *White Knights, Pre–Nuptial Confidences, and the Morning After: The Effect of Transaction–Related Disclosures on the Attorney–Client and Related Privileges*, 5 DePaul Bus. L.J. 59 (1993) (exploring the "tensions that can arise in the attorney-client privilege when corporate transactions occur or are contemplated" and concluding

Seller did not carve out from the assets transferred to the surviving corporation any pre-merger attorney-client communications, and this court will not unilaterally read such a carve out into the parties' contract.[32] Absent such an express carve out, the privilege over all pre-merger communications—including those relating to the negotiation of the merger itself—passed to the surviving corporation in the merger, by plain operation of clear Delaware statutory law under § 259 of the DGCL.

The Seller also argues that waivers of the attorney-client privilege are not lightly inferred,[33] and that irrespective of the fact that the Seller in this case did nothing to preserve the privilege—either in terms of i) negotiating a provision in the merger agreement that pre-merger attorney-client communications made in connection with the negotiations did not pass to the surviving corporation in the merger and would remain privileged except as waived by the surviving corporation, or ii) by taking any action to ensure that those attorney-client communications did not pass to the surviving corporation in bulk and remain in the surviving corporation's full possession and control *for an entire year*—that the Seller has nonetheless not waived the privilege. But having decided that the attorney-client privilege for the documents passed as a matter of law to the surviving corporation in the merger, these waiver-related arguments need not be addressed, including the substantial issue of whether the Seller waived the privilege through its lengthy failure to take any reasonable steps to ensure the Buyer did not have access to the allegedly privileged communications.

For all these reasons, the Buyer's motion for disposition of privilege dispute is granted.[34] IT IS SO ORDERED.

---

that "forethought and planning can reduce ... uncertainty and properly provide for improved protection in many instances").

**32.** To do so would "create a new contract with rights, liabilities and duties to which the parties had not assented." *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992).

**33.** *See Davenport Grp. v. Strategic Inv.*, 1995 WL 523591 (Del.Ch. Aug. 24, 1995) ("Public policy encourages courts to protect attorney client privilege."); *Hollingsworth v. Essence Comm'ns, Inc.*, 1977 WL 2585 (Del.Ch. July 15, 1977) (noting that "[t]he attorney-client privilege is too basic to our law to permit it to be disregarded lightly or under uncontrolled conditions").

**34.** The Buyer and the Seller also filed cross-motions regarding the Entry of a Protective Order. As a result of my ruling that all privileges pass to the surviving corporation in the merger as a matter of law under § 259 of the DGCL, this issue has been rendered moot, which the Seller acknowledged could occur. Thus, the Seller's Motion for Entry of a Protective Order is DENIED, and the Buyer's Motion for Entry of Proposed Amended Protective Order is GRANTED.