Billings, Thomas P., J.
When Company A has acquired Company B, who owns and controls the attorney-client privilege applicable to pre-merger communications between Company B and its counsel, regarding the merger itself? A few different courts— but none in Massachusetts — have given different answers. On the facts of, and the law applicable to, the present case, the answer is: Company A, the acquiror.
BACKGROUND
In 2009, the defendant (“Raytheon’s”) acquired and merged with BBN Technologies Holding Corp. (“BBN”). The merger was accomplished in two steps. First, a *383 wholly-owned Raytheon subsidiaiy formed for the purpose (“Merger Sub”) acquired and merged with BBN. Then, Merger Sub was merged into Raytheon.
All three parties- — Raytheon, BBN, and Merger Sub — were incorporated under Delaware law. BBN’s in-house general counsel at the time, David Lintz, and its outside counsel, the firm of Ropes & Gray, negotiated the terms of the Agreement and Plan of Merger (“Merger Agreement”) and advised BBN concerning it. Lintz is now an employee of Raytheon.
The Merger Agreement included, at Section 3.11 and Schedule 3.11, certain representations regarding environmental matters, whose proper interpretation and application is the subject of the larger dispute giving rise to this case. Other relevant provision of the Merger Agreement included the following:
Section 2.1. Merger
At the Effective Time [to be specified in the certificate of merger], on the terms, and subject to the conditions, set forth in this Agreement, and in accordance with the applicable terms of the DGCL [Delaware General Corporation Law], Merger Sub will merge with and into [BBN] (the “Merger”), the separate corporate existence of Merger Sub will cease and [BBN] will continue its corporate existence as the surviving corporation in the merger and as a direct or indirect wholly-owned subsidiaiy of [Raytheon].
* * * *
Section 2.4. Effect of Merger
At the Effective Time, the Merger will have the effects set forth in this Agreement and the applicable provisions of the DGCL. Without limiting the generality of the foregoing sentence, and subject thereto, from and after the Effective Time, all property, rights, privileges, immunities, powers, franchises, licenses and authority of [BBN] and Merger Sub will vest in the Surviving Corporation, and all debts, Liabilities, restrictions and duties of [BBN] and Merger Sub will become the debts, Liabilities, restrictions and duties of the Surviving Corporation.
The parties are nearing the end of discovery. The plaintiff is contemplating depositions of Atty. Lintz and, perhaps, one or more Ropes & Gray attorneys, to get their recollections on matters (including attorney-client communications) relating to the proper interpretation of a sentence in Schedule 3.11 pertaining to the environmental representations. He asserts that he, as the shareholders’ representative, has succeeded to BBN’s attorney-client privilege as it relates to pre-merger communications between BBN and its counsel relating to the merger and the Merger Agreement. Raytheon asserts that it, not the BBN shareholders, succeeded to the privilege, irrespective of the time and subject of the attorney-client communications.
DISCUSSION
No reported Massachusetts case has considered the extent to which the surviving corporation in a merger or other acquisition succeeds to the attorney-client privilege formerly possessed and controlled by the acquired entity. There is general consensus “that when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well,” Commodities Futures Trading Comm’n u. Weintraub, 471 U.S. 343,348 (1985), and that this rule applies to acquisitions. See, e.g., Tekni-Plex, Inc. v. Meyner & Landis, 89 N.Y.2d 123, 130, 136-38, 674 N.E.2d 663, 651 N.Y.S.2d 954 (1996).
The Techni-Plex court, however, made an exception for attorney-client communications on the subject of the acquisition itself. It reasoned that
to grant [the acquiror] control over the attorney-client privilege as to communications concerning the merger transaction would thwart, rather than promote, the purposes underlying the privilege. The attorney-client privilege encourages “full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice.” Where the parties to a corporate acquisition agree that in any subsequent dispute arising out of the transaction the interests of the buyer will be pitted against the interests of the sold corporation, corporate actors should not have to worry that their privileged communications with counsel concerning the negotiations might be available to the buyer for use against the sold corporation in any ensuing litigation. Such concern would significantly chill attorney-client communication during the transaction.
89 N.Y.2d at 138-39 (citations omitted).[1]
The Tekni-Plex holding, honoring as it does the core value of the oldest privilege known to the Anglo-American common law, has undoubted appeal. It is of course well settled, however, that the privilege may be waived, Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 303 (2009), and that the right to assert or waive it may pass to one party to another. Weintraub, supra.
In this case, all three participants were incorporated in Delaware, and the Merger Agreement specified at Section 2.4 that “the Merger will have the effects set forth in this Agreement and the applicable provisions of the DGCL,” and more specifically, that “from and after the Effective Time, all property, rights, privileges, immunities, powers, franchises, licenses and authority of [BBN] and Merger Sub will vest in the Surviving Corporation.” In this, the Merger Agreement both adopts and echoes section 29(a) of the Delaware General Corporation Law (8 Del. Code Ann. §259(a)), which provides that following a merger, “all property, rights, privileges, powers and franchises, and all and eveiy other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations.”
At least two judges of the Delaware Court of Chan-ceiy have considered variations of this issue. In *384 Postorivo v. AG Paintball Holdings, Inc., 2008 WL 343856 (Del.Ch. Feb. 7, 2008), mentioned in footnote 1, supra, the rule of law was predetermined by the parties’ contractual agreement that New York law— and thus, the Tekni-Plex rule — would apply. Id. at *4.
Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund, I, LLLP, 80 A.3d 155 (Del. Ch. 2013), by contrast, considered a situation very close to that presented here: the Merger Agreement provided that “(t]he merger shall have the effects set forth in this Agreement and in the applicable provisions of the DGCL and the [California General Corporations Law (’CGCL)],” and that disputes were to be resolved under Delaware law. Id. at 156 & n. 1. The Chancellor considered these provisions, the above-quoted language of section 259(a) of the DGCL, and the absence in the Merger Agreement of “any provision excluding pre-merger attorney-client communications from the assets of [the acquired company] to the Buyer.” Id. at 156. He rejected the claim of the acquired company’s shareholders that they controlled the privilege attaching to the acquired company’s pre-merger communications with its counsel — or at least, those pertaining to the merger itself — as “not a plausible interpretation of the plain statutory language,” and unsupported by any available legislative history. Id. at 157.
Asked to engraft the Tekni-Plex holding onto Delaware law, the Chancellor was of the view that
the General Assembly’s statutory determination leaves no room for judicial improvisation ... If the General Assembly had intended to exclude the attorney-client privilege [from section 259(a)], it could easily have said so. Instead, the statute uses the broadest possible language to set a clear and unambiguous default rule: all privileges of the constituent corporations pass to the surviving corporation in a merger. .. Whatever the case may be in other states, members of the Delaware judiciary have no authority to invent a judicially-created exception to the plain words “all. . . privileges” and usurp the General Assembly’s statutory authority.
Id. at 159-60 (footnotes omitted; italics in original).
Finally, the Chancellor acknowledged the public policy argument for shielding confidential attorney-client communications from potential adversaries. He answered (a) that where statutory language is unambiguous, “there is no policy gap for the court to fill,” and (b) that parties to merger agreements “can — and have — negotiated special contractual agreements to protect themselves and prevent certain aspects of the privilege from transferring to the surviving corporation.” Id. at 160. “Absent such an express carve out,” however, “the privilege over all pre-merger communications — including those relating to negotiation of the merger itself — passed to the surviving corporation in the merger, by plain operation of clear Delaware statutory law under §259 of the DGCL.” Id. at 162.
A decision of the Delaware Chancery Court on Delaware law, of course, lacks the binding character of a decision of the Delaware Supreme Court. Nonetheless, the Chancery Court is a tribunal of celebrated erudition, particularly in matters of Delaware commercial and corporate law, and its rulings deserve careful consideration. The Great Hill decision is, I believe, solidly reasoned, and I accept its holding as the law of Delaware, unless and until a Delaware or Massachusetts appellate court advises otherwise.
ORDER
For the foregoing reasons, the Court provides the following clarification in response to Plaintiff Kenneth J. Novack’s Motion to Clarify the Holder of the Attorney-Client Privilege Relating to the Negotiation of the Merger Agreement: Under the terms of the Merger Agreement and Delaware law Raytheon, not the BBN shareholders, control the attorney-client privilege, even as to communications concerning the merger and the negotiations preceding it.

The plaintiff cites to four other cases that refer favorably to the Tekni-Plex holding, but whose useful precedential value is, in each instance, limited. In Orbit One Comms., Inc. v. Numerex Corp., 255 F.R.D. 98, 105 (S.D.N.Y. 2008), the court applied the Tekni-Plex to a diversify case, which was governed by New York law as pronounced by its highest court. Similarly, in Postorivo v. AG Paintball Holdings, Inc., 2008 WL 343856 (Del.Ch. Feb. 7, 2008), the Asset Purchase Agreement stipulated that New York law would apply, so the Vice Chancellor accepted Tekni-Plex as governing law. The two other cases also cited Tekni-Plex with apparent approval, but in service of holdings only indirectly related to the question before me. See Safeco Ins. Co. of America v. M.E.S., Inc., 289 F.R.D. 41, 53 (E.D.N.Y. 2011) (interpreting indemnify agreement that provided for assignment of claims and transfer of books and records, and looking to Tekni-Plex for a New York law analogy), and Girl Scouts — Western Oklahoma v. Barringer-Thompon, 252 P.3d 844, 848 & n.7 (Okla. 2011) (citing Tekni-Plex, but holding that merger agreement that “that transferred all assets, properties and privileges to the surviving corporation” was effective, at least where the documents sought “are not materials regarding the merger transaction itself,” which in that case, they weren’t).