# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAREHOLDER REPRESENTATIVE SERVICES LLC, as representative of the stockholders and optionholders of Radixx Solutions International, Inc., | ) ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | C.A. No. 2018-0517-KSJM |
| RSI HOLDCO, LLC and TA XII-A, L.P., | ) ) ) | |
| Defendants/Counterclaim Plaintiffs. | ) ) | |
| RSI HOLDCO, LLC and TA XII-A, L.P., | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| RONALD J. PERI, JAMES L. JOHNSTON, THOMAS R. ANDERSON, DENIS P. COLEMAN, and JUDI LOGAN, | ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: February 21, 2019
Date Decided: May 29, 2019

Rudolf Koch, Susan M. Hannigan, Matthew W. Murphy, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Christopher F. Robertson, Alison K. Eggers, SEYFARTH SHAW LLP, Boston, Massachusetts; *Counsel for Shareholder Representative Services LLC, Ronald J. Peri, James L. Johnston, Thomas R. Anderson, Denis P. Coleman, and Judi Logan.*

John P. DiTomo, Jarrett W. Horowitz, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Roberto M. Braceras, Adam Slutsky, Ezekiel L. Hill, GOODWIN PROCTER LLP, Boston, Massachusetts; *Counsel for RSI Holdco, LLC and TA XII-A, L.P.*

**McCORMICK, V.C.**

The following scenario is quite common: In merger negotiations, the target company and the buyer retain their own attorneys. At closing, the target company and all of its assets transfer to the buyer by way of the surviving company. That transfer involves the transfer of computer systems and email servers, which contain pre-merger communications between the target company's owners and representatives (i.e., the sellers) and the target company's counsel. Thus, in a post-closing dispute between the sellers and buyer, the buyer possesses the target company's privileged pre-merger attorney-client communications, including those concerning merger negotiations.

This common scenario gives rise to the question currently before the Court: When may a buyer use the acquired company's privileged pre-merger attorney-client communications in post-closing litigation against the sellers?

The Court of Chancery previously addressed this issue in *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*.[1] The Court held that by operation of Section 259 of the Delaware General Corporation Law (the "DGCL"), all assets of a target company, including privileges over attorney-client communications, transfer to the surviving company unless the sellers take affirmative action to prevent transfer of those privileges.[2] In *Great Hill*, the sellers

---

[1] 80 A.3d 155 (Del. Ch. 2013).

[2] *See id.* at 157, 162.

1

did not retain their ability to assert privilege over the pre-merger attorney-client communications because they *neither* negotiated for language in the merger agreement preserving the right to assert privilege over the communications *nor* prevented the surviving company from taking actual possession of the communications. Thus, the Court held that the sellers waived their ability to assert privilege. The Court further advised that in the future sellers should "use their contractual freedom" to avoid waiver.[3]

In this case, the sellers used their contractual freedom to secure a provision in the merger agreement, which preserved their ability to assert privilege over pre-merger attorney-client communications. That provision also prevented the buyer from using or relying on those privileged communications in post-closing litigation against the sellers. Yet, the buyer argues that these contractual protections are insufficient. Because the sellers did not excise or segregate the privileged communications from the computers and email servers transferred to the surviving company, the buyer contends that the sellers waived privilege, and that the buyer may thus use the communications in this litigation.

This decision rejects the buyer's arguments, concluding that the broad contractual language for which the sellers negotiated prevents the buyer from using the privileged communications in this litigation.

---

[3] *Id.* at 161.

## I. FACTUAL BACKGROUND

RSI Holdco, LLC ("Holdco") acquired Radixx Solutions International, Inc. ("Radixx") in September 2016 pursuant to an Agreement and Plan of Merger (as amended, the "Merger Agreement").[4] Seyfarth Shaw LLP ("Seyfarth") served as counsel to Radixx in connection with the merger.[5] The Merger Agreement designated Shareholder Representative Services LLC ("Representative") as representative of Radixx's selling stockholders.[6]

Through the merger, Holdco obtained possession of Radixx's computers and email servers.[7] Those computers and servers contained approximately 1,200 pre-merger emails between Radixx and Seyfarth (the "Emails").[8] As Holdco acknowledges, at the time of the communications, the Emails were presumably privileged.[9] The Emails were not excised or segregated from Radixx's other communications at the time the merger closed.[10]

---

[4] C.A. No. 2018-0517-KSJM Docket ("Dkt.") 2, Verified Compl. ("Compl.") Ex. A, Agreement and Plan of Merger; Dkt. 4, Compl. Ex. G, Ex. 2, Amendment to Agreement and Plan of Merger.

[5] *See* Dkt. 34, RSI Holdco, LLC's Mot. for Disposition of Privilege Dispute ("Mot.") ¶ 4; Dkt. 42, Countercl. and Third Party Defs.' Response to Mot. for Disposition of Privilege Dispute and Cross-Mot. for Protective Order ("Cross-Mot.") ¶ 1.

[6] Merger Agreement § 11.09(a).

[7] *See* Mot. ¶ 6.

[8] *Id.*

[9] *Id.* ¶ 1.

[10] *See id.* ¶ 6.

Section 13.12 of the Merger Agreement addresses pre-merger privileged communications.  Section 13.12 provides:

> Any privilege attaching as a result of [Seyfarth] representing [Radixx] . . . in connection with the transactions contemplated by this Agreement [1] shall survive the [merger's] Closing and shall remain in effect; *provided*, that such privilege from and after the Closing [2] shall be assigned to and controlled by [Representative]. [3] In furtherance of the foregoing, each of the parties hereto agrees to take the steps necessary to ensure that any privilege attaching as a result of [Seyfarth] representing [Radixx] . . . in connection with the transactions contemplated by this Agreement shall survive the Closing, remain in effect and be assigned to and controlled by [Representative].  [4] As to any privileged attorney client communications between [Seyfarth] and [Radixx] . . . prior to the Closing Date (collectively, the "Privileged Communications"), [Holdco], the Merger Subsidiary and [Radixx] (including, after the Closing, the Surviving Corporation), together with any of their respective Affiliates, successors or assigns, agree that no such party may use or rely on any of the Privileged Communications in any action or claim against or involving any of the parties hereto after the Closing.

As reflected by the bracketed numbers, Section 13.12 accomplishes four objectives.  Section 13.12:  (1) preserves any privilege attaching to pre-merger communications as a result of Seyfarth's representation of Radixx in connection with the merger; (2) assigns to Representative control over those privileges; (3) requires the sellers and buyer to take steps necessary to ensure that the privileges remain in effect; and (4) prevents Holdco and affiliates from using or relying on any privileged communications in post-closing litigation against the sellers.

4

On July 17, 2018, Representative commenced this litigation against Holdco and its affiliate TA XII-A, L.P. ("TA"),[11] claiming that Holdco and TA breached the Merger Agreement and a related agreement by failing to repay a "holdback amount" withheld from the purchase price.[12] On August 20, 2018, Holdco and TA asserted counterclaims/third-party claims against Representative and five selling stockholders.[13]

Before Representative commenced this litigation, the parties arbitrated and negotiated over certain purchase price adjustment issues. The parties' dispute over the Emails first surfaced in that context.[14] In a letter to Representative's counsel dated May 9, 2018, Holdco informed Representative that it had discovered the Emails and took the position that the sellers had waived any claim of privilege over these Emails.[15] Representative responded by letter on May 14, 2018.[16] Pointing to Section 13.12 of the Merger Agreement, Representative informed Holdco that it

---

[11] Dkt. 1.

[12] Compl. ¶¶ 3, 115–41.

[13] The crux of their claims is that Radixx's founder, Ronald J. Peri, fraudulently induced Holdco and TA to close the Radixx merger by misrepresenting material facts. *See* Dkt. 13, Defs.' Answer and Affirmative Defenses, and Verified Compl. of Countercls. Pls. and Third-Party Pls. at pp. 65–95 ¶¶ 83–89.

[14] *See* Dkt. 34, Transmittal Aff. of Jarrett W. Horowitz in Supp. of RSI Holdco, LLC's Mot. for Disposition of Privilege Dispute ("Horowitz Aff.") Ex. C at 4.

[15] Horowitz Aff. Ex. B at 1–2.

[16] Horowitz Aff. Ex. C.

5

asserted privilege over the Emails and directed Holdco to refrain from reviewing them.[17]  Holdco replied on May 16, 2018, and maintained its assertion of waiver.[18]

Now, Holdco seeks to use the Emails in this litigation.  Toward that end, on November 9, 2018, Holdco brought the parties' privilege dispute before this Court, filing a Motion for Disposition of Privilege Dispute.[19]  Through the motion, Holdco seeks "full, unfettered access" to the Emails.[20]  In response, Representative cross-moved for entry of a protective order.[21]  The Court heard argument on the parties' competing requests on February 21, 2019.[22]

## II.    LEGAL ANALYSIS

In *Great Hill*, the buyer discovered communications between the sellers and the selling company's attorneys on the surviving company's computer systems.[23]  It was undisputed that the parties' merger agreement "did not carve out from the assets transferred to the surviving corporation any pre-merger attorney-client

---

[17] *Id.* at 1, 4.

[18] Horowitz Aff. Ex. D.

[19] Dkt. 34.

[20] Mot. ¶ 1.

[21] Dkt. 42.

[22] Dkt. 60.

[23] 80 A.3d at 156.

6

communications," and that "the merger was intended to have the effects set forth in the [DGCL]."[24]

The Court determined that Section 259 of the DGCL controlled. Section 259 provides, "all property, rights, *privileges*, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation . . . ."[25] The Court concluded that "privileges" included evidentiary privileges over attorney-client communications.[26] Applying this rule, the Court held that absent "an express carve out, the privilege over all pre-merger communications—including those relating to the negotiation of the merger itself—passed to the surviving corporation in the merger . . . ."[27]

For sellers worried about losing the right to assert privilege over their company's pre-merger communications with its pre-merger counsel, *Great Hill* cautioned that "the answer . . . is to use their contractual freedom . . . to exclude from the transferred assets the attorney-client communications they wish to retain as their own."[28]

---

[24] *Id.* at 156, 162.

[25] 8 *Del. C.* § 259(a) (emphasis added).

[26] *See* 80 A.3d at 157.

[27] *Id.* at 162.

[28] *Id.* at 161.

The sellers in this action heeded the *Great Hill* court's advice—they used their contractual freedom to secure Section 13.12 of the Merger Agreement. By its plain and broad language, Section 13.12 preserved privilege over the Emails and assigned control over the privilege to Representative. Indeed, Section 13.12 does more than preserve the privilege. Its "no-use" clause provides that "none of the parties 'may use or rely on any of the Privileged Communications in any action or claim against or involving any of the parties [to the Merger Agreement] after the Closing.'"[29] Thus, Section 13.12 prevents Holdco from doing exactly what Holdco seeks to do— use the Emails in litigation with the sellers.

In response, Holdco first argues that Section 13.12 does not apply. Holdco reasons that the "no-use" clause applies on its face only to privileged communications, and that the Emails at issue "are not privileged *at this point in time* because any privilege was long ago waived" by the sellers' post-closing conduct.[30]

Holdco's first argument runs contrary to the express language of Section 13.12 of the Merger Agreement. Delaware law governs this analysis,[31] and under

---

[29] Cross-Mot. ¶ 2 (quoting Merger Agreement § 13.12).

[30] Dkt. 46, RSI Holdco, LLC's Reply in Further Supp. of Its Mot. for Disposition of Privilege Dispute and Response to S'holder Representative Servs. LLC's Cross-Mot. for Protective Order ¶ 8 (emphasis added).

[31] *See* Merger Agreement § 13.07 ("This Agreement []and any claims or disputes arising out of or related hereto . . . shall in all respects be governed by, and construed in accordance with, the Laws of the State of Delaware . . . .").

Delaware law, "if the relevant contract language is clear and unambiguous, courts must give the language its plain meaning."[32] Section 13.12 defines "Privileged Communications" as "any privileged attorney client communications between [Seyfarth] and [Radixx] . . . *prior to the Closing Date*[.]"[33] Holdco does not challenge the privilege as of the closing date, but rather rests its arguments on sellers' post-closing conduct.[34] Thus, regardless of whether the sellers waived privilege subsequent to the closing date, the plain language of Section 13.12 bars Holdco from using or relying on the Emails in this litigation.

Holdco further contends that "a merger agreement 'carve-out' provision[,]" like Section 13.12, "does not render that privilege immune from subsequent waiver."[35] On this point, Holdco parrots arguments made in *Great Hill*. There, the buyer argued in the alternative that because the sellers failed to take "steps to segregate" or "excise" the communications from the computer systems pre-merger and had "done nothing" post-closing to "get these computer records back," waiver

---

[32] *Westfield Ins. Gp. V. J.P.'s Wharf, Ltd.*, 859 A.2d 74, 76 (Del. 2004) (internal quotation marks omitted).

[33] Merger Agreement § 13.12 (emphasis added).

[34] *See, e.g.*, Mot. ¶ 2 ("[W]hether the privilege . . . was transferred to [Representative] at the time of the merger is separate and distinct from whether [Representative] has since waived the privileged."); *id.* ¶ 3 ("[Holdco] obtained access to the emails following closing. And in the two years since closing, [Representative] has done **nothing** to address the disclosure of those emails to [Holdco] . . . ." (emphasis in original)).

[35] *Id.* ¶ 14.

was warranted.[36]  Because the Court ruled that the privilege had passed to the surviving company, the Court did not address the buyer's alternative waiver argument.[37]

Holdco's argument for waiver would undermine the guidance of *Great Hill*— which cautioned parties to negotiate for contractual protections.[38]  Permitting Holco to both "use and rely on" the Emails would further render the express language of Section 13.12 meaningless.[39]  Unsurprisingly, Holdco's argument finds no support in authority.  As noted above, *Great Hill* did not resolve the waiver issue.  As putative support, Holdco cites to the Court's remarks during oral argument held in *Great Hill*.  But read in context, those remarks do not actually support Holdco's position;[40] they have no precedential value in any event.  Holdco also cites to a white

---

[36] *Great Hill*, 80 A.3d at 156.

[37] *Id.* at 162 ("having decided that the attorney-client privilege for the documents passed as a matter of law to the surviving corporation in the merger, these wavier-related arguments need not be addressed").

[38] *Id.* at 160–61.

[39] Delaware courts "will not read a contract to render a provision or term 'meaningless or illusory.'"  *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[40] Holdco concedes that the Court in *Great Hill* did not rule on the issue of waiver, but contends that Holdco's position is the "clear teaching" of *Great Hill* based on the oral argument transcript.  Mot. ¶ 15 (citing Horowitz Aff. Ex. E, *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, C.A. No. 7906-CS (Del. Ch. Oct. 15, 2013) (TRANSCRIPT) ("*Great Hill* Tr.")).  But the quote on which Holdco relies represents then-Chancellor Strine's efforts to understand *counsel's* argument.  *See Great Hill* Tr. at 12–13 (THE COURT:  "But I take it your argument here is . . . .  And if you match contractual protection with . . . keeping the stuff, . . . then you have a fairly complete solution . . . .").  Tellingly, later in the argument, then-Chancellor Strine stated:  "[T]here are ways for

10

paper on *Great Hill* published in July 2016. That white paper does not support Holdco's position or have any effect on Representative's ability to assert privilege on behalf of Radixx's sellers.[41]

Holdco's arguments in support of waiver suffer another problem. Section 13.12 required all parties to the Merger Agreement to "take the steps necessary to ensure that any privilege attaching as a result of [Seyfarth] representing [Radixx] . . . in connection with the transactions contemplated by this Agreement shall survive the Closing, remain in effect and be assigned to and controlled by the [Representative]."[42] Accordingly, for privilege to be waived, it would necessarily be due in part to Holdco's own failure to "take the steps necessary" to preserve it. Holdco cannot argue that its own failure to preserve privilege should now inure to its benefit.

## III. CONCLUSION

For the above reasons, Section 13.12 of the parties' Merger Agreement operated to preserve the sellers' privilege over the Emails. The Representative has

---

people to even do it contractually that don't necessarily even involve the physical excision of the documents . . . ." *Id.* at 85.

[41] The white paper describes various issues regarding privilege left open by *Great Hill* and a lack of consensus on how "selling companies are assigning rights of attorney-client privilege related to pre-closing communications." Horowitz Aff. Ex. A, Paul Koenig, *What to Make of the Great Hill Case – The M&A Bar is Not Yet in Agreement on How Best to Address M&A Privilege Issues* (July 2016).

[42] Merger Agreement § 13.12.

the authority to assert that privilege in this litigation. And Holdco and TA are barred from using or relying on the Emails in this litigation.

Holdco's motion is hereby DENIED, and Representative's cross-motion is hereby GRANTED.