**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

v.

**STATE OF DELAWARE DEPARTMENT OF ADMINISTRATIVE SERVICES Defendant.**

**C.A. No. 1551–K.**

Court of Chancery of Delaware, Kent County.

Submitted: March 12, 2003.
Decided: May 7, 2003.

Ian Connor Bifferato, Bifferato Bifferato & Gentilotti, Wilmington, Delaware; Fred A. Mendicino, Elizabeth A. O'Gara, Watt, Tieder, Hoffar & Fitzgerald, LLP, Mc-Lean, Virginia, for Plaintiff.

Lawrence W. Lewis, Mary Page Bailey, Stephani J. Ballard, State of Delaware Department of Justice, Wilmington, Delaware, for Defendant.

### OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

This action arises out of a contract and a resultant arbitration proceeding between the State of Delaware (the "State") and a construction company hired by the State in connection with a substantial construction project. The contract at issue, naturally, required completion of the project within a specified period of time. After several delays, the State initiated a claim in arbitration.

The construction company then asked an arbitrator to consolidate the State's arbitration with another arbitration involving the construction company's subcontractor for that project, as well as to join various other parties. The arbitrator denied the construction company's request for consolidation. The construction company then filed suit in this court seeking an injunction preventing the State's arbitration and review of the arbitrator's denial of consolidation.

The State has moved to dismiss for want of subject matter jurisdiction. The court agrees with the State that it is without jurisdiction to hear this claim because the request for an injunction is itself time barred. The court is also without jurisdiction over the construction company's request to vacate the arbitrator's ruling because that ruling was not a final "award" within the meaning of 10 *Del. C.* § 5714(a)(3).

### II.

On April 8, 1998, the State executed a contract with W.B. Venables & Sons ("Venables") for the construction of the Public Archives Building and renovation of the existing Hall of Records, both being located in Dover, Delaware. Fidelity & Deposit Company of Maryland ("F&D") was Venables's surety for this contract. The contract between the parties provided that the entire project was scheduled for completion on August 4, 2000.

Construction began on May 11, 1998. As construction progressed, the State allowed Venables to revise its projected completion date several times. Venables submitted to the State multiple revised schedules detailing the extent of certain delays and how they affected Venables's expected completion date. The State accepted these schedules, and the eight months of delays associated with them, without objection.

The State's acceptance of Venables's delays continued until the spring of 1999. On March 29, 1999, Venables submitted to the State a Request for Equitable Adjustment ("REA") demanding compensation for some of the delays to the project and the resulting extra costs due to its belief that the State was responsible for them. The State denied Venables's REA on April 7, 1999, and claimed that Venables bore responsibility for the project's delay because Salisbury Steel Products, its struc-

tural steel manufacturer subcontractor, was the cause of such delay. Venables continued to assert that it was entitled to relief pursuant to its REA, and as of December 5, 1999, Venables's REA was still pending.

By letter dated April 28, 1999, the State told Venables that certain delays caused by Venables's structural steel manufacturer subcontractor were injuring the State and gave rise to a money damages claim under the contract between the parties. On June 28, Venables submitted another revised schedule moving the end of the new construction phase to March 15, 2001. The State rejected this schedule in writing on July 23, 1999. That letter stated that under Section 4.3 of the contract executed between the parties, the State would be seeking a claim for delay damages against Venables. The State estimated the damages to be approximately $25,000 per month.

In January 2000, F&D took over the Public Archives building project from Venables, due to Venables's financial difficulties. F&D also took assignment of Venables's contract with the State.

The contract between the parties required arbitration of disputes pursuant to the Rules of the American Arbitration Association ("AAA"). On January 18, 2002, the State filed a Demand for Arbitration (the "Demand") with the AAA. In the Demand, the State seeks to recover damages caused by delays attributable to the original contractor (Venables), and subsequently to F & D as Venables's surety. On February 13, 2002, the State sent to F & D, by certified mail, return receipt requested, a Notice of Intention to Arbitrate (the "Notice") pursuant to 10 *Del. C.* § 5703(c). A final arbitration hearing on the State's Demand has yet to be scheduled.

On June 25, 2002, F & D filed with the AAA a Motion to Consolidate and/or Join. That Motion attempted to consolidate the claim F & D had filed against subcontractor Joseph Rizzo & Sons, and to join several other parties to the arbitration involving the State. During the summer of 2002, both parties engaged in discovery related to the arbitration. On August 28, 2002, F & D filed a response to the State's Demand as well as a counterclaim. On October 8, 2002, the arbitrator issued his ruling denying F & D's Motion to Consolidate.

### III.

On January 6, 2003, F & D filed with this court a Verified Petition seeking to enjoin the State's Demand due to its failure to comply with claim limitation provisions set forth in the parties' contract, or, in the alternative, to vacate the arbitrator's ruling denying F & D's Motion to Consolidate the State's arbitration with the Joseph Rizzo & Sons arbitration. In support of its Petition, F & D filed Motions to Enjoin and Vacate on January 10 and January 31, respectively. The State subsequently filed a Motion to Dismiss F & D's Petition and Opposition to F & D's Motion to Enjoin.

### IV.

The State has moved to dismiss F & D's Verified Petition pursuant to Court of Chancery Rules, 12(b)(1) and 12(b)(6), asserting that F & D's Petition is barred for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Because the court concludes that it has no subject matter jurisdiction over F & D's claims, it will not reach the question of whether F & D has stated a claim upon which relief can be granted.

A. *Count I: The Court Is Without Jurisdiction Over F & D's Petition To Enjoin*

▇ F & D invokes the jurisdiction of this court to enjoin arbitration pursuant to 10 *Del. C.* § 5702(c) and § 5703(b), alleging that the State's claim for arbitration under the contract is "barred by a limitation of time." Whether the Court of Chancery has subject matter jurisdiction to enjoin pending arbitrations in this regard is governed by 10 *Del. C.* § 5702(c). Section 5702(c) states:

> If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the State, a party may assert the limitation as a bar to the arbitration on complaint to the Court as provided in § 5703(b) or by way of defense in an existing case.[1]

Yet, the right to seek court intervention pursuant to the above statute is not without restriction. In accordance with Section 5703(b) and (c), a party may oppose a petition to enjoin arbitration if the party filing the petition has either: (1) already participated in the arbitration, or (2) not filed a complaint to enjoin the arbitration within 20 days of receipt of service of a "notice of intention to arbitrate."[2] Here, F & D has failed to file its complaint within 20 days of receipt of the Notice, and

has participated in the arbitration proceedings for almost one year.

1. *The State's Notice Of Intention To Arbitrate Fully Complied With The Statutory Requirements Of 10* Del. C. *§ 5703(c)*

A party that opposes a petition to enjoin an arbitration may not rely upon Section 5703(b) and (c) if that party has failed to strictly comply with the statutory requirements for instituting an arbitration proceeding.[3] Section 5703(c) sets forth the procedure a party must employ to initiate an arbitration:[4]

> A party must serve upon another party a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought ... and stating that unless the party served applies to enjoin the arbitration within 20 days after such service such party shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in Court the bar of a limitation of time. Such notice shall be served in the same manner as a summons or by registered or certified mail, return receipt requested. *A complaint seeking to enjoin arbitration must be made by the party served within 20 days after service of the notice or the party shall be so precluded.*[5]

---

1. In addition, 10 *Del. C.* § 5703(b) provides: Subject to subsection (c) of this section, a party who has not participated in the arbitration and who has not been made or served with an application to compel arbitration may file its complaint with the Court seeking to enjoin arbitration on the ground that a valid agreement was not made or has not been complied with or that the claim sought to be arbitrated is barred by limitation of § 5702(c).

2. 10 *Del. C.* § 5703(b) and (c).

3. *See Weymouth v. State of Delaware,* 1983 WL 17987, at *4 (Del.Ch. July 18, 1983) (holding that a party's failure to follow the "unequivocal mandate of 10 *Del. C.* § 5703(c) precludes [that party] from attempting to deny the Plaintiff the opportunity to enjoin the arbitration....").

4. 10 *Del. C.* § 5703(c).

5. Emphasis added.

The State on February 13, 2002 served its Notice in full compliance with the express terms of Section 5703(c), upon W. Glenn Speicher, Jr., Senior Claims Counsel for F & D, by certified mail, return receipt requested. Notably, F & D does not dispute that the State filed its Notice, that such Notice met every explicit requirement of Section 5703(c), and that the Notice was timely received by F & D's representative. F & D also cannot dispute that F & D did not file its Petition until January 6, 2003, more than 320 days after service of the Notice. Rather, F & D argues that dismissal of F & D's Petition is inappropriate because the State "failed to provide statutorily required notice pursuant to Section 5703 *prior to* filing its Demand for Arbitration."[6] The problem with this argument is that no such requirement exists.

As discussed above, Section 5703(c) provides specific requirements a party must follow in order to invoke the 20–day time limitation of the statute, such as the content and manner of service of the Notice. The statute does not, however, set any requirements as to the timing of the Notice in relation to the timing of the initiation of arbitration proceedings. Rather,

F & D argues that a requirement that the Notice be served before the Demand is somehow "implied" by the statute. To buttress this "implication" argument, F & D relies on cases from outside jurisdictions, in irrelevant legal contexts (*i.e.,* landlord/tenant law), to create a general proposition that a "notice" must always precede some other action.[7] This "implication" argument, however, does not persuade the court in this context.[8]

■ Here, the court must construe a Delaware statute that is plain on its face and silent as to the term that F & D seeks to engraft. Where a statute is unambiguous, the plain meaning of the words controls.[9] By accepting F & D's position that Notice *must* precede the Demand (which procedurally begins the arbitration process), the court would be imposing an additional term upon the statute that was not put in place by the legislature.

■ It is well-settled in Delaware that "[a] court may not engraft upon a statute language which has been clearly excluded therefrom."[10] "[The] role [of] judges is limited to applying the statute objectively and not revising it."[11] Section

**6.** F & D Ans. Br. at 8 (emphasis in original).

**7.** *See id.,* at 10 (citing *Hershey v. State of Illinois,* 43 Ill.Ct.Cl. 108 (Ill.Ct.Cl.1990); *Estill v. Alabama State Tenure Comm'n,* 650 So.2d 890 (Ala.Civ.App.1994); and *Pfeifle v. Tanabe,* 620 N.W.2d 167 (N.D.2000)).

**8.** F & D's reliance on *Weymouth* in this context is misplaced. In *Weymouth,* the State filed a Demand on June 4, 1982 and filed a letter that purported to be a Notice on June 7, 1982, *three days after* the Demand. Weymouth filed suit to enjoin on July 2, 1982, 24 days after the June 7 Notice. The court denied the defendant's attempt to invoke the 20–day time limitation of Section 5703(c), not because the Demand had been filed before the Notice, but because the State's Notice was not served in the manner specifically articulated

by the statute. Moreover, the Notice did not contain the required statutory language regarding the obligation to file suit within 20 days to preserve the claim. The court expressed no concern over the timing of the Demand relative to the Notice. *Weymouth,* 1983 WL 17987, at *4.

**9.** *See Rubick v. Security Instrument Corp.,* 766 A.2d 15, 18 (Del.2000).

**10.** *In re Adoption of Swanson,* 623 A.2d 1095, 1097 (Del.1993); *see also DMS Properties–First, Inc. v. P.W. Scott Assoc., Inc.,* 1999 WL 1261335, at *4 (Del.Ch.1999), *rev'd on other grounds,* 748 A.2d 389 (Del.2000).

**11.** *In re Adoption of Swanson,* 623 A.2d at 1097.

5703(c) is a very specific statute. The legislature was clearly capable of articulating exacting requirements as to the nature, service and contents of a notice of intention to arbitrate. If the legislature had intended or desired to regulate the timing of the Notice relative to the Demand it could easily have done so. It did not, and accordingly neither will this court.[12]

### 2. F & D Has Actively Participated In The Arbitration Proceeding For Almost One Year

In addition to the statutory limitations of Section 5703(c), a separate and distinct reason exists that precludes F & D from invoking the jurisdiction of this court with respect to its Section 5702(c) claim. An application to enjoin arbitration before this court may only be made by "a party who has not participated in the arbitration...."[13] F & D has actively participated in the current arbitration, including: filing a response and counterclaim to the State's claim; selection of the arbitration panel; scheduling of discovery and arbitration hearing dates; and initiating discovery requests. Moreover, on June 25, 2002,

F & D filed its own Motion to Consolidate the State's arbitration with a separate arbitration claim filed by F & D against its subcontractor, Joseph Rizzo & Sons, and several other parties.

F & D argues that the requirement of "non-participation" under Section 5703(b) is "contingent" upon receipt of a proper Notice under Section 5703(c). This interpretation, however, is not borne out by a plain reading of Section 5703(b). That section simply provides that the right to seek an injunction is "subject to subsection (c)." This is *an additional limitation* to the requirement that the party not have participated in the arbitration. That is, a party must not have participated in the arbitration (nor have been served with an application to compel) *and* the application to enjoin must be made in compliance with Section 5703(c) (*i.e.*, the 20–day limitation). This interpretation is supported by *Board of Education of the Seaford School District v. W.B. Venables & Sons, Inc.*[14] There, the court found that because the School District had actively participated in the underlying arbitration proceedings, it was barred, pursuant to Section 5703(b), from seeking to enjoin the proceedings.

---

**12.** F & D argues that allowing a Demand to precede a Notice could result in absurd or mischievous results, such as the claimant awaiting "participation" by the respondent (in contravention of if Section 5703(b)) and then filing a Notice, which "could effectively block a respondent from exercising its rights." F & D Ans. Br. at 12. This argument is slightly misguided, however. Section 5703 Notice only starts the clock running on the limitations period. If a party is served with a Demand before receiving a Notice, that party could still seek injunctive relief from this court before participating in the arbitration and receiving the Notice. A party is not *required* to wait for receipt of a Notice before seeking an injunction. The Notice only serves as an outer limit to when injunctive relief may be sought.

Section 5702(c) understands this difference and actually contemplates a scenario under Section 5703(c) in which Demand could be filed before Notice:

> *If, at the time that a demand for arbitration was made* or *a notice of intention to arbitrate was served,* the claim sought to be arbitrated would have been barred by a limitation of time had it not been asserted in a court of this State, a party may assert the limitation as a bar to the arbitration on complaint to the Court as provided in § 5703(b) ... (emphasis added).

Thus, Section 5702(c) provides that a matter may be enjoined due to a limitation of time that exists *either* when a Demand is made or when a Notice is served.

**13.** 10 *Del. C.* § 5703(b).

**14.** 1978 WL 171757 (Del.Ch.1978).

The court raised this as a separate bar, in addition to the failure to file its complaint within 20 days within receipt of notice. The court explained:

> [i]n addition to having to file timely to enjoin arbitration, the party seeking such relief also must not have participated in the arbitration. If a party participates in the arbitration process, it is thereby foreclosed from using any of the three enumerated grounds set forth in the statute, as a basis for seeking an injunction against the arbitration.[15]

The purpose of the "non-participation" clause of Section 5703(b) is to avoid precisely the scenario the State is faced with here. A party who is led to believe, through the respondent's participation in arbitration proceedings, that the respondent not only does not oppose, but actually desires to participate in, arbitration should not be hauled into court one year into the proceedings only after a party has become dissatisfied with how the proceedings are turning out.

For all the foregoing reasons, the court will dismiss Count I of F & D's Verified Petition for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B. Count II: The Court Is Without Jurisdiction Over F & D's Motion To Vacate The Arbitrator's Consolidation Ruling

■ ■ The Delaware Uniform Arbitration Act ("DUAA")[16] contemplates a process whereby the Court of Chancery conducts only limited review of arbitration proceedings, including the ability to vacate an "award," in strict compliance with and only for the reasons enumerated in 10 Del. C.

§ 5714(a). F & D argues that the arbitrator's decision not to consolidate should be vacated pursuant to Section 5714(a)(3), which provides that an award may be vacated where the court finds that "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made." F & D argues that "the subject matter submitted" language refers to any subject that a respondent asks an arbitrator to rule on, which "indicate[s] the legislature's intent to provide for the Court's jurisdiction over all kinds of arbitration awards."[17] The court cannot agree with this overly broad interpretation of the statutory language of the DUAA.

The Delaware Supreme Court "has recognized that the public policy of Delaware favors arbitration."[18] Here, the State initiated a claim for arbitration against F & D, in accordance with the contract between the parties. The "subject matter submitted" to the arbitration panel is the original claim of the State for delay damages as well as a counterclaim filed by F & D (alleging that the State refused to make progress payments on the project). For its own reasons, F & D moved to consolidate the State's arbitration claim with another claim F & D itself had filed against a subcontractor (Rizzo), as well as to "join" numerous other subcontractors against whom no claims were pending. Pursuant to Rule 7 of the AAA Construction Industry Arbitration Rules, F & D submitted the question of whether consolidation and/or joinder was proper to a "single arbitrator [appointed] for the limited purpose of deciding whether related arbitra-

---

**15.** Id., at *2 (emphasis added).

**16.** 10 Del. C. Ch. 57.

**17.** F & D Ans. Br. at 25.

**18.** DMS Properties–First, Inc. v. P.W. Scott Assoc., Inc., 748 A.2d 389, 391 (Del.2000).

tions should be consolidated or joined...."[19]

Following briefing by the parties, the appointed arbitrator issued a "Ruling" denying the motion to consolidate. Contrary to F & D's interpretation, this was not a final "award" on "the subject matter" of the claim. It was simply a preliminary, interlocutory decision that addressed a narrow procedural question in advance of actual arbitration. Such a ruling does not constitute an "award" over which this court can assume jurisdiction or vacate pursuant to 10 *Del. C.* § 5714(a).

This conclusion is supported by a careful analysis of the entire DUAA.[20] Although the term "award" is not defined by the DUAA, it is not ambiguous either. The multiple sections of the DUAA that use the term "award" all logically contemplate "final" and not interlocutory or procedural orders. For example, the DUAA provides that this court has jurisdiction to "enter judgment on an award."[21] Obviously, the court could not enter "judgment" on an interlocutory order, such as the denial of a motion to consolidate. Moreover, the court's ability to "confirm an award," on application made up to one year after its delivery,[22] or to modify or correct awards for mistakes or miscalculations,[23] also logically envision "final" and not interlocutory or procedural orders.

Finally, a review of the contract between the parties further evidences the parties' intent that an "award" be final. Under the section entitled General Conditions, the contract provides that "the *award* rendered by the arbitrator or arbitrators *shall be final* and *judgment may be entered upon it* in accordance with applicable law...."[24] The formal arbitration in this case, however, has not even begun.

Thus, neither as a matter of contractual nor statutory interpretation can the arbitrator's October 5, 2002 ruling on F & D's Motion to Consolidate, which is a matter ancillary and preliminary to the actual arbitration, be considered an "award" that is subject to review or vacation by the court at this point in the proceedings. Therefore, the court will dismiss Count II of F & D's motion to vacate pursuant to Court of Chancery Rule 12(b)(1).

## V.

For the foregoing reasons, the State's motion to dismiss F & D's entire Verified Petition pursuant to Court of Chancery Rule 12(b)(1) is **GRANTED. IT IS SO ORDERED.**

---

**19.** F & D Petition, Ex. C. at 8 (citing Rule 7) (emphasis added).

**20.** *See Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d 1242, 1245 (Del. 1985) ("A statute is passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part or section to produce an harmonious whole.").

**21.** 10 *Del. C.* § 5701; § 5702(a); *see also* § 5717 (providing for Register to enter "award" on the judgment roll).

**22.** 10 *Del. C.* § 5713.

**23.** 10 *Del. C.* § 5715.

**24.** F & D Motion To Enjoin, Tab 1 at § 4.5.7.