COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: October 12, 2021
Date Decided: January 27, 2022

Neal C. Belgam, Esquire
Robert K. Beste, III, Esquire
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

Thomas A. Uebler, Esquire
Joseph L. Christensen, Esquire
McCollom D'Emilio Smith Uebler LLC
Little Falls Centre Two
2751 Centerville Road, Suite 401
Wilmington, DE 19808

Re: *Astrum Fund I GP, LP v. Sylvie Maracci et al.,*
C.A. No. 2020-0919-PAF

*Sylvie Maracci et al. v. Astrum Fund I GP, LP et al.,*
C.A. No. 2021-0073-PAF

Dear Counsel:

This Letter Opinion addresses three motions in two related cases concerning an arbitration decision issued on July 20, 2020. First, in C.A. No. 2020-0919, Petitioner Astrum Fund I GP, LP ("Astrum GP") seeks to vacate the arbitration decision. Astrum GP has moved for summary judgment on its petition. Respondents Sylvie Maracci, Farhad Bahar, Carole Filley, Sharon Carz, and Joshua Penn (collectively the "Limited Partners") have moved to dismiss Astrum GP's petition. Second, in C.A. No. 2021-0073, the Limited Partners have filed a petition to confirm the arbitration decision. The Limited Partners have moved for summary judgment

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 2 of 25

in their action.  The parties have briefed all three motions in one series of briefs.[1]

For the reasons stated below, the motions are denied.

## I.    BACKGROUND[2]

Unless otherwise specified, the facts recited in this Letter Opinion are drawn from the Verified Petition to Vacate Arbitration Decision (the "First Vacatur Petition" or "First Vacatur Pet."),[3] the Amended Verified Petition to Vacate

---

[1] The parties briefed all three motions in a single series of four briefs pursuant to a stipulated scheduling order.  Dkt. 7.  For ease of reference, this is how the briefing proceeded and how the court will refer to each brief in this Letter Opinion:  On March 12, 2021, the Limited Partners filed their opening brief (the "LPs' Opening Br.").  Dkt. 26.  On April 9, 2021, the Astrum Parties filed their combined opening and answering brief (the "Astrum Parties' Ans. Br.").  Dkt. 27.  On May 7, 2021, the Limited Partners filed their combined answering and reply brief (the "LPs' Reply Br.").  Dkt. 28.  On May 21, 2021, the Astrum Parties filed their reply brief (the "Astrum Parties' Reply Br.").  Dkt. 29.

[2] C.A. No. 2020-0919-PAF is referred to as the "Astrum Parties' Action" and C.A. No. 2021-0073-PAF is referred to as the "Limited Partners' Action."  Unless otherwise specified, docket references refer to the Astrum Parties' Action.

[3] Dkt. 1.  The First Vacatur Petition was filed by Astrum Fund I Manager, LP ("Astrum Manager") "as the "managing partner of Astrum Fund I, LP."  First Vacatur Pet. ¶ 6.  The Amended Vacatur Petition was filed by Astrum Fund I GP, LP in its alleged capacity as "the general partner of Astrum Fund I LP.  Am. Vacatur Pet. ¶ 6.  In their combined opening and answering brief with respect to all three motions, counsel for the Astrum Parties indicated that they had learned the First Vacatur Petition "inadvertently named Astrum Manager as the petitioner rather than Astrum GP.  When Astrum GP discovered this issue, [Astrum GP] was promptly revived and filed an Amended Petition substituting itself as the petitioner."  Astrum Parties' Ans. Br. 21.  Except for substituting Astrum GP for Astrum Manager, the Amended Vacatur Petition is nearly identical to the First Vacatur Petition.  According to the Limited Partners, Astrum Manager "managed Astrum for a discrete

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 3 of 25

Arbitration Decision (the "Amended Vacatur Petition" or "Am. Vacatur Pet."),[4] and the Verified Petition to Confirm Arbitration Award and Resolve Damages (the "Confirmation Petition" or "Confirmation Pet."),[5] and documents integral thereto.[6]

### A. The Parties

Astrum Fund I LP ("Astrum"), a real estate investment vehicle, is a Delaware limited partnership that was formed on May 27, 2011.[7]  Astrum's general partner is Astrum GP, a Delaware limited partnership, with its primary place of business in California.[8]   Astrum GP's general partner is Astrum I.M., LLC ("Astrum California"), a California limited liability company formed on July 10, 2010.[9]

Nevin Sanli, a California resident, "is the founder, majority owner, and managing director of Astrum California."[10]   The Limited Partners allege that,

---

period of time at inception, but not beyond."  LPs' Opening Br. 1.  As of the date of argument, Astrum Manager was no longer a named party in either case.

[4] Dkt. 22.

[5] Limited Partners' Action, Dkt. 1.

[6] Exhibits attached to the Limited Partners' Opening Brief will be cited as "Ex."

[7] LPs' Opening Br. 1.  *See* Ex. A ("Partnership Agreement" or "LPA").

[8] Am. Vacatur Pet. ¶ 6.

[9] Confirmation Pet. ¶¶ 18–19.

[10] *Id.* ¶ 20.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 4 of 25

through counsel, Sanli has controlled Astrum, Astrum GP, and Astrum California in this litigation and in the arbitration giving rise to this litigation.[11]  Astrum, Astrum GP, Astrum California, and Sanli are together the "Astrum Parties."[12]

Sylvie Maracci, Farhad Bahar, Carole Filley, Sharon Carz, and Joshua Penn invested in and became limited partners of Astrum in June 2011.  Astrum is governed by an Amended and Restated Limited Partnership Agreement (the "Partnership Agreement" or "LPA").

---

[11] *Id.* ¶¶ 8–9, 16–17, 26–27.  The Astrum Parties do not dispute this allegation.

[12] There are several allegations as to the viability of some of the Astrum entities and their authority to act at various times in this action.  For example, the Delaware Secretary of State canceled Astrum's existence on October 24, 2017, due to Astrum's failure to appoint a registered agent.  Confirmation Pet. ¶ 4.  Astrum GP filed a Certificate of Revival with the Delaware Secretary of State on February 3, 2021, to revive Astrum.  Ex. O.  The Delaware Secretary of State canceled Astrum GP's existence on June 1, 2017, due to its failure to pay taxes.  Confirmation Pet. ¶ 12.  Astrum GP's general partner, Astrum California, filed a Certificate of Revival with the Delaware Secretary of State on February 3, 2021, to revive Astrum GP.  Ex. P.  Astrum California was dissolved and had its existence canceled when, on February 16, 2018, Sanli filed a Certificate of Dissolution and a Certificate of Cancellation with the California Secretary of State.  Ex. Q.  Some of these facts are disputed, and the implications of those events—including the timing of the filing of the Amended Vacatur Petition—are among other grounds for the Limited Partners' opposition to the Astrum Parties' efforts to vacate the Arbitrator's decision.  I need not address those issues here, because I deny all three motions on the grounds that the Arbitrator's decision is not final.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 5 of 25

### B.     The Limited Partnership Agreement

Upon investing Astrum, each of the Limited Partners signed the Partnership Agreement.[13]  At that time, Sanli was Astrum's Original Limited Partner.[14]  Sanli executed the LPA on behalf of Astrum GP.[15]

The Partnership Agreement exculpates Astrum GP from liability for any losses suffered by Astrum or any of the limited partners, except for losses attributable to "Disabling Conduct."[16]  Disabling Conduct is defined as "a final adjudication, by binding arbitration in accordance with [the LPA's dispute resolution provisions], of the occurrence of fraud, willful misconduct, reckless disregard of duties, uncured gross negligence, or an uncured material breach of this Agreement, in each case causing material damage to the Partnership."[17]

The dispute resolution section of the Partnership Agreement contains both a forum selection provision and an arbitration provision.  Section 16.4 provides in pertinent part:

---

[13] Confirmation Pet. ¶ 29.

[14] LPs' Opening Br. 5.

[15] LPA.

[16] *Id.* § 6.l(a)

[17] *Id.* § 1.1.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 6 of 25

Except as provided in Section 16.5, any action or proceeding against the parties relating in any way to this Agreement may be brought and enforced only in the courts of the State of Delaware or the United States District Court for the District of Delaware, to the extent subject matter jurisdiction exists therefore . . . .[18]

Section 16.5 provides in pertinent part:

Any dispute between the General Partner and the Limited Partners with respect to any Disabling Conduct or any conflict of interest between the General Partner and [Astrum], or any interpretation of this Agreement shall be submitted to expedited arbitration as provided below (but any damages must be resolved in a court described in Section 16.4). The prevailing party in any arbitration or litigation shall be reimbursed for its arbitration costs (including attorneys' fees) by the non-prevailing party.

If any dispute arises concerning the interpretation, validity or performance of this Agreement or any of its terms and provisions . . . then the parties shall submit such dispute for binding determination before a retired judge selected from the American Arbitration Association ('AAA') (pursuant to the commercial rules) . . . . The arbitrator shall apply Delaware substantive law to the [arbitration] proceeding. The arbitrator shall, to the fullest extent permitted by law, have the power to grant all legal and equitable remedies and award compensatory damages provided by law . . . . The arbitrator shall award costs and attorneys' fees in accordance with the terms and conditions of this Agreement . . . . Any Delaware court having jurisdiction may enter judgment on the award rendered by the arbitrator, or correct or vacate such award as provided by applicable law . . . .

Notwithstanding any provision of the Agreement to the contrary, this Section 16.5 shall be construed to the maximum extent possible to comply with the laws of the State of Delaware, including the Uniform Arbitration Act (10 Del. C. 5701 et seq.) (the 'Delaware Arbitration Act'). If, nevertheless, it shall be

---

[18] *Id.* § 16.4.

*Astrum Fund I GP, LP v. Maracci et al.,*
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.,*
C.A. No. 2021-0078-PAF
January 27, 2022
Page 7 of 25

determined by a court of competent jurisdiction that any provision or wording of this Section 16.5, including any rules of the American Arbitration Association, shall be invalid or unenforceable under the Delaware Arbitration Act, or other applicable law, such invalidity shall not invalidate all of this Section 16.5. In that case, this Section 16.5 shall be construed so as to limit any term or provision so as to make it valid or enforceable within the requirement of the Delaware Arbitration Act or other applicable law, and, in the event such term or provision cannot be so limited, this Section 16.5 shall be construed to omit such invalid or unenforceable provision.[19]

## C.    The Arbitration

In 2013, Astrum purchased a portfolio of five properties from American Forest Products, LLC, which Astrum then leased back.[20] The leasee defaulted, leading to Astrum's ultimate failure.[21] The Limited Partners lost their entire investment except for a "few dividend payments."[22] On September 15, 2016, Maracci, Bahar, Filley, Carz, and others filed an action against Astrum, Astrum GP, Astrum California, Sanli and others in California state court, alleging breach of the Partnership Agreement and other claims (the "California Action").[23] On January 6, 2017, the California court dismissed the California Action without prejudice on

---

[19] *Id.* § 16.5.

[20] LPs' Opening Br. 5.

[21] *Id.* at 7.

[22] *Id.*

[23] *See* Ex. I (A) at 1–2.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 8 of 25

grounds of forum non conveniens.[24]  By then, the Limited Partners had initiated arbitration proceedings against the Astrum Parties, Astrum Manager, and Sanli Pastore & Hill, a California partnership ("SPH"), before the American Arbitration Association (the "Arbitration Action").[25]  The Honorable Nicholas J. Dibiaso (Ret.) served as the arbitrator (the "Arbitrator").[26]  On April 13, 2018, the Arbitrator granted the motion of Astrum Manager, Astrum California, and SPH to dismiss on the grounds that they were not signatories to the LPA and, therefore, the Arbitrator lacked arbitral jurisdiction.[27]

On July 20, 2020, the Arbitrator issued a 51-page Final Interim Decision containing findings of fact and conclusions of law.[28]  On August 3, 2020, the Arbitrator issued an Interim Partial Award (or "IPA").[29]  The Interim Partial Award

---

[24] *Id.* at 1.

[25] LPs' Opening Br. 1–2; Ex. B at 26 (noting action initiated in September 2016).

[26] Judge Dibiaso previously served as trial appellate court judge in the California State courts.  *Justice Nickolas J. Dibiaso (Retired)*, https://www.fedarb.com/professionals/justice-nickolas-j-dibiaso-retired-ca-justice-of-the-court-of-appeal/ (last visited Jan. 27, 2022).

[27] Ex. K at 1.

[28] Ex. B.

[29] Ex. C.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 9 of 25

held that Astrum GP had committed Disabling Conduct by breaching the LPA and, separately, by breaching the fiduciary duty of care.[30]  The Arbitrator stopped short of issuing a final award because of language in Section 16.5 of the LPA that states "any damages" with respect to a Disabling Conflict "must be resolved" in a Delaware court:

> Because Part I of Section 16.5 of the [LPA] is a specific provision that controls over the general provisions in Part II of Section 16.5 of the Limited Partnership Agreement, the Arbitrator does not have arbitral jurisdiction to 'resolve' the damages, if any, resulting from either [Astrum GP's] breach of the contract or [Astrum GP's] breach of the fiduciary duty of care, and, under Part I of Section 16.5 of the [LPA], all such damages, if any, must be 'resolved' by an appropriate Delaware Court.[31]

On October 27, 2020, Astrum Manager filed the First Vacatur Petition challenging the Interim Partial Award (C.A. No. 2020-0919).[32]  On December 15, 2020, the Limited Partners moved to dismiss the First Vacatur Petition in its entirety.[33]  On December 29, 2020, Astrum Manager moved for summary judgment as to the claims in the First Vacatur Petition.[34]  On February 9, 2021, Astrum GP

---

[30] *Id.* ¶¶ 4–5.

[31] *Id.* ¶ 6.

[32] Dkt. 1.

[33] Dkt. 15.

[34] Dkt. 16.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 10 of 25

filed the Amended Vacatur Petition.[35]  On March 3, 2021, the Limited Partners moved to dismiss the Amended Vacatur Petition in its entirety.[36]

On January 28, 2021, the Limited Partners filed their Confirmation Petition to confirm the IPA (C.A. No. 2021-0073).[37]  On March 3, 2021, the Limited Partners moved for summary judgment as to the claims in the Confirmation Petition.[38]  The parties briefed the motions, and the court heard argument via remote video on October 12, 2021.[39]

The parties' arguments are briefly summarized as follows.  The Limited Partners contend the Arbitrator's decision is final, and in any event, the court should "resolve" damages based upon the Arbitrator's decision and confirm the Interim Partial Award under the Delaware Uniform Arbitration Act ("DUAA").  The Limited Partners also argue that the petitions to vacate are untimely and unauthorized because the entities that filed the petitions had been canceled when they asserted their challenges to the Arbitrator's decision.  The Limited Partners also

---

[35] Dkt. 22.

[36] Dkt. 25.

[37] Limited Partners' Action, Dkt. 1.

[38] Limited Partners' Action, Dkt. 7.

[39] Dkt. 34.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 11 of 25

argue that the Astrum Parties have not established grounds to vacate the Arbitrator's decision under the criteria set forth in Section 5714 of the DUAA. The Astrum Parties contend that the Arbitrator's decision is not final and that the decision must be vacated pursuant to the DUAA because the Arbitrator exceeded his authority.

## II.   ANALYSIS

Astrum GP's Amended Vacatur Petition seeks to vacate the Interim Partial Award under the DUAA.[40] The Confirmation Petition likewise states that the Limited Partners "bring this action" "[p]ursuant to the Delaware's Uniform Arbitration Act, Sections 5701 through 5725 of Title Ten."[41]

The Limited Partners seek to dismiss the Amended Vacatur Petition under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) the Amended Vacatur Petition for failure to state a claim.[42] Both sides have moved for summary judgment on their respective petitions—Astrum GP seeking to vacate the Arbitrator's decision, and the Limited Partners to confirm it.

---

[40] Am. Vacatur Pet. ¶ 5 ("10 *Del. C.* 5714(a)(3) authorizes the Court to vacate awards in which an arbitrator exceeds his or her authority. The Court should do so here.").

[41] Confirmation Pet. at 1.

[42] LPs' Opening Br. 10.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 12 of 25

> ### A. The Interim Partial Award Is Not a Final Award Subject to Confirmation or Vacatur Under the Delaware Uniform Arbitration Act.

"The Court of Chancery is proudly a court of limited subject matter jurisdiction. The Court defends that boundary and has a duty to examine issues of subject matter jurisdiction *sua sponte*." *Crown Castle Fiber LLC v. City of Wilmington*, 2021 WL 2838425, at *1 (Del. Ch. July 8, 2021). "The Court of Chancery will dismiss an action for want of subject matter jurisdiction if it appears from the record that the Court does not have jurisdiction over the claim." *Medek v. Medek*, 2008 WL 4261017, at *3 (Del. Ch. Sept. 10, 2008) (cleaned up). "The burden of establishing the court's subject matter jurisdiction rests with the party seeking the Court's intervention" and the "court may consider documents outside the complaint." *Maloney-Refaie v. Bridge at Sch., Inc.*, 2008 WL 2679792, at *7 (Del. Ch. July 9, 2008) (cleaned up). "It is settled law that parties may not confer subject matter jurisdiction by agreement." *Thompson v. Lynch*, 990 A.2d 432, 434 (Del. 2010).

> #### 1. The DUAA Applies.

When parties have expressly provided in their contract for the DUAA to govern their dispute, the DUAA applies. *See* 10 *Del. C.* § 5702(a) ("The making of

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 13 of 25

an agreement described in § 5701 . . . specifically referencing the [DUAA] and the parties' desire to have it apply to their agreement confers jurisdiction on the Court [of Chancery] to enforce the agreement under this chapter . . . .").[43]

Section 16.5 of the LPA provides that it "shall be construed to the maximum extent possible to comply with the laws of the State of Delaware, including the Uniform Arbitration Act (10 Del. C. 5701 et seq.) . . . ."  The DUAA plainly and unambiguously applies, and no party contends otherwise.

### 2. The Court's Authority to Confirm, Vacate, or Modify Awards Under the DUAA

Where a party petitions to confirm, vacate, or modify an award under the DUAA, the court is strictly bound by the requirements of the statute and lacks subject matter jurisdiction to do anything else.  *See SC&A Constr., Inc. v. Potter*, 2016 WL 70901, at \*2 (Del. Ch. Jan. 6, 2016) (denying motion to vacate as time-barred and holding "I am therefore without jurisdiction to entertain such a request here, and must confirm the Arbitration Award under Section 5713"), *aff'd*, 147 A.3d 748 (Del. 2016).  Under 10 *Del. C.* § 5713, the court "shall confirm an award upon complaint or application of a party in an existing case made within [one] year after its delivery

---

[43] 10 *Del. C.* § 5702(a).

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 14 of 25

to the party"[44] unless a motion to vacate, modify, or correct the award is, subject to certain exceptions, "made within 90 days after delivery of a copy of the award to the applicant."[45] "If the application to vacate is denied and no motion to modify or correct the award is pending, the Court shall confirm the award."[46]

If a party does not move to vacate, modify, or correct a final award within 90 days of the award's delivery, the court lacks jurisdiction to vacate or modify the award; "the courthouse doors are closed." *Gulf LNG Energy, LLC v. Eni USA Gas Mktg. LLC*, 242 A.3d 575, 584 (Del. 2020). This court interprets the DUAA to be consistent with the Federal Arbitration Act (the "FAA") because "Delaware arbitration law mirrors federal law." *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006). As with the FAA, if the parties have agreed the DUAA controls their arbitration, then Sections 5713, 5714, and 5715 "provide the exclusive means to vacate, modify, or correct the award." *Gulf LNG Energy,* 242 A.3d at 583 (discussing the analogous provisions of the FAA). "In considering an application to vacate an arbitration award, the Court is limited to a determination of whether there

---

[44] 10 *Del. C.* § 5713.

[45] *Id.* §§ 5714(b), 5715(a).

[46] *Id.* § 5714(d).

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 15 of 25

exists any of the five statutory grounds for vacating an award, as set forth in 10 *Del. C.* § 5714." *Malekzadeh v. Wyshock*, 611 A.2d 18, 21 (Del. Ch. 1992) (citing federal cases applying the FAA); *accord Mansoory v SC&A Const., Inc.*, 2009 WL 2140030, at *3 (Del. Ch. July 9, 2009) ("In considering an application to vacate and arbitration award, the court is limited to determining whether there exists any of the five statutory grounds for vacating an award as set forth in 10 *Del. Ch.* § 5714."); *see Capron v. Buccini*, 2001 WL 237929, at *2 (Del. Super. Ct. Feb. 28, 2001) ("the [DUAA] is the exclusive remedy now available to the appellant to confirm an arbitration award").

Section 5714 of the DUAA allows the court to vacate an award under five specific statutory grounds. In general, Section 5714 "allows the court to vacate an award when corruption, fraud partiality, or an invalid arbitration agreement is present. The court can also vacate an award if an arbitrator exceeded his power or the award was procured by other undue means." *Worldwide Ins. Gp. V. Klopp*, 603 A.2d 788, 791 n.4 (Del. 1992).

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 16 of 25

### 3. Under the DUAA, the Court Confirms, Modifies, or Vacates Final Decisions.

As a general matter, the DUAA contemplates confirmation or vacatur of awards that constitute a final arbitral decision. "Although the term 'award' is not defined by the DUAA, it is not ambiguous either. The multiple sections of the DUAA that use the term 'award' all logically contemplate 'final' and not interlocutory or procedural orders." *Fidelity & Deposit Co. of Md. v. State Dep't of Admin. Servs.*, 830 A.2d 1224, 1231 (Del. Ch. 2003); *see also Blank Rome, LLP v. Vendel*, 2003 WL 21801179, at \*5 (Del. Ch. Aug. 5, 2003) ("Under Delaware law, an 'award' is a decision or determination that an arbitrator intends to be a final adjudication of a controversy submitted to arbitration.").[47]

In this respect, the DUAA also mirrors federal arbitration law. The FAA "also uses 'award' in conjunction with finality," *Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000), and "[f]ederal courts may only review

---

[47] *See also* 10 *Del. C.* § 5716 ("Upon the granting of an order confirming . . . an award, except in cases where the award is for money damages, a final judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree."); 10 *Del. C.* § 5718(a) (requiring an award confirming an award for money damages to be filed with the prothonotary of the Superior Court, who then must enter the amount of the award and the parties on the docket, which "shall constitute a judgment or decree on the docket with the same force and effect as if rendered in an action at law").

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 17 of 25

arbitration awards that are final." *Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 99 (W.D.N.Y. 2019), *aff'd*, 988 F.3d 618 (2d Cir. 2021).[48]  That is because Section 10(a)(4) of the FAA—the analogue to Section 5714(a)(3) of the DUAA[49]—"requires that an award be 'mutual, final and definite' as a prerequisite to confirmation." *Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc.*, 127 F. Supp. 2d 482, 486 (S.D.N.Y. 2001).

### 4.      What Makes an Award Final?

"The prerequisite of finality promotes the role of arbitration as an expeditious alternative to traditional litigation." *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 233 (1st Cir. 2001).  "In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them." *Michaels v. Mariforum Shipping, S. A.*, 624 F.2d 411, 413 (2d Cir. 1980).

---

[48] *See also Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) ("[J]udicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases.").

[49] *Compare* 9 U.S.C.A. § 10(a)(4) (providing that an arbitration award may be vacated "upon the application of any party to the arbitration" where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made"), *with* 10 *Del. C.* § 5714(a)(3) (providing that an arbitration award may be vacated "[u]pon complaint or application of a party" if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made").

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 18 of 25

In general, "[a]n arbitration award is not final if it reveals that the arbitrators have yet to resolve each issue that the parties have empowered the arbitrators to decide." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 322 (3d Cir. 2021). Moreover, an arbitration award will not be considered final unless it resolves "all the issues submitted to arbitration . . . definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (emphasis omitted). Finality is a legal determination that courts make based on the "terms of the contract"[50] and "attributes of the award and arbitration record."[51]

"Generally, a claim is completely determined when the arbitrators decide both liability and damages." *Corp. Printing Co. v. New York Typographical Union No.*

---

[50] *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 909 (S.D.N.Y.), *aff'd*, 689 F.2d 301 (2d Cir. 1982); *see also Zeiler v. Deitsch*, 500 F.3d 157, 160–61, 169 (2d Cir. 2007) (noting that the "confirmable nature" of various accounting orders in an arbitration proceeding "stems from the unique character of this arbitration, as agreed by the parties").

[51] *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 321 & n.15 (3d Cir. 2021) (collecting cases).

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 19 of 25

*6, No. 93 CIV. 6796 (SS)*, 1994 WL 376093, at *4 (S.D.N.Y. July 18, 1994).[52] There are narrow exceptions. An interim award that decides liability alone may be considered final for purposes of judicial review if the contract or the arbitration record reflects the parties' intent to have the dispute resolved in a series of distinct arbitration proceedings. In those circumstances, the arbitrator was to decide both liability and damages, but in distinct phases of the arbitration.[53] Courts have also reviewed interim awards resolving time-sensitive issues where the failure to approve the interim award would impede the resolution of the dispute or render the final

---

[52] *See also, e.g., Kerr-McGee Ref. Corp. v. M/T Triumph,* 924 F.2d 467, 471 (2d Cir. 1991) (holding that award was not final because it "merely decided the issue of liability and partial damages" and left open whether plaintiff was also entitled to "punitive or RICO damages, costs and attorneys' fees").

[53] *See Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC*, 861 F.3d 287, 292 (1st Cir. 2017) (holding award was final because "the parties have agreed to submit the issue of liability to the arbitrator for a distinct determination prior to a separate [arbitral] proceeding to assess damages"); *Hart Surgical*, 244 F.3d at 235–36 (holding interim award was final because contract provided for a "formal, agreed-to bifurcation at the arbitration stage"); *Providence J. Co. v. Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001) (noting the "parties and the arbitrator agreed to bifurcate the arbitral proceeding and understood the determination of liability to be a final award"); *Corp. Printing*, 1994 WL 376093, at *4 (explaining the "parties agreed to bifurcate the liability and remedy issues, and submitted to [the arbitrator] the liability portion of their dispute, for immediate resolution"); *Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) (involving parties that sought a bifurcated decision "and asked the panel to decide the issue of liability immediately, a decision that was expressly intended to have immediate collateral effects in the judicial proceeding").

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 20 of 25

award "meaningless and frustrate[] exercise of the Arbitrators' powers." *Sperry*,

532 F. Supp. at 909.[54]

Although an award need not specify a precise damages amount to be

considered final, it must at least provide sufficient information for the parties to

quantify the award. *See Blank Rome*, 2003 WL 21801179, at *5 (holding arbitrator's

letters, which provided sufficient information to "enable[] the parties themselves to

quantify the Final Award," constituted an arbitral "award"); *Norsworthy v. NYS*

*Consulting, LLC*, 2021 WL 4149877, at *8 (Del. Ch. Sept. 10, 2021) (Order) ("'If

an arbitrator's decision is clear enough to indicate unequivocally what each party is

required to do, it will be considered a final award even if arithmetical or accounting

calculations or similar technical acts remain to be completed. The arbitrator need

not award a specific sum and the actual amount of damages may remain to be

computed.'" (quoting 2 Martin Domke *et al.*, *Domke on Commercial Arbitration* §

---

[54] *See id.* at 903–05 (holding that interim award "requiring both parties to escrow in a joint account the amount of the proceeds of the Letter of Credit" pending resolution of contract claims was final award); *Publicis*, 206 F.3d at 729–31 (deeming as final arbitration tribunal's order to turn over tax records for discovery that the tribunal agreed was "extremely urgent"); *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1022–23 (9th Cir. 1991) (holding that temporary equitable relief "essential to preserve assets or enforce performance" is reviewable if non-review "may render a final award meaningless").

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 21 of 25

33:7 (2014))). Nevertheless, an award "should be certain and must leave open no loophole for future dispute and litigation." 2 Domke § 33.7.

### 5. The IPA Is Not a Final Decision.

In this case, the Arbitrator determined that the Limited Partners are "entitled to relief in the form of rescission of the Limited Partnership Agreement under both law and equity with respect to [Astrum GP's] breach of contract and with respect to [Astrum GP's] breach of the fiduciary duty of care."[55] The Arbitrator stated, however, that he "does not have arbitral jurisdiction to 'resolve' the damages, if any, resulting from" Astrum GP's breach of contract or breach of the duty of care under Section 16.5 of the LPA.[56]

The Arbitrator did, however, articulate how relief would logically be determined. In the Interim Final Decision, the Arbitrator stated:

> It is unnecessary to go further and recap the only possible measure and amount applicable . . . with respect to rescissory damages or equitable restitution – that is, the dollar amounts of each Claimant's investment, less distributions received by the Claimant, with interest accrued to date on the balance.[57]

---

[55] Ex. C ¶ 7.

[56] *Id*. ¶ 6.

[57] Ex. B at 45.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 22 of 25

The Arbitrator further noted that the amounts of the Limited Partners' investments and the amounts of distributions received were in the record, "can easily be presented to a Delaware Court," and "should be, if necessary, a matter of another stipulation among the parties."[58]

It is apparent that the Arbitrator recognized the conundrum that Section 16.5 presented—affording the Arbitrator broad authority to determine all disputes, and the power "to grant all legal and equitable remedies including . . . compensatory damages provided by law," except for any Disabling Conduct, in which case "any damages must be resolved in a court"[59] As the Arbitrator put it: "What am I to do, given my lack of contract jurisdiction to 'resolve' damages, a necessary preliminary condition to the entry of a final award by me in this Arbitration?"[60]

One reading of the IPA—which the Limited Partners seem to promote—is that the Arbitrator's decision was sufficiently clear enough to allow the final damages amount to be resolved through a straightforward calculation.[61] The Astrum

---

[58] *Id.* at 45–46.

[59] Ex. A § 16.5.

[60] Ex. B at 49.

[61] LPs' Opening Br. 30–31.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 23 of 25

Parties dispute that reading, both as a matter of law and fact.[62]  Faced with the contract language, the Arbitrator acknowledged the Limited Partners' concern that this court may determine that it lacks subject matter jurisdiction to resolve damages and send the matter back to the arbitrator.  The Arbitrator explained:

> If that is what occurs, then I will "resolve" damages as well as prevailing party fees and costs and any other issues brought before me. I do not presume to instruct a Delaware court about how it might or should address the issue.  I have some ideas about what I might do if I were a judge of a Delaware or California court faced with the problem, but I am not in the position of an advocate for any party in this Arbitration.[63]

To be sure, Section 16.5 is an unusual provision.  As the Astrum Parties read it, and how the Arbitrator seems to have read it, the LPA not only seems to bifurcate the liability and damages issues as to a Disabling Conflict issue, but also assigns those separate tasks to separate tribunals.  The parties have not cited, and the court has not located, any case that has considered and upheld such a provision. Separating the liability and damages determinations is inherently inefficient and contrary to a primary purpose of arbitration, which "is to avoid the expense and delay

---

[62] Astrum Parties' Ans. Br. 8, 11–12.

[63] Ex. B at 50.  Frankly, the arbitrator's ideas as to this gnarly issue would be welcome.

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 24 of 25

of court proceedings."  *Gulf LNG Energy*, 242 A.3d at 584 n.44 (quoting *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986).

I am not, at this stage, deciding whether the court or the Arbitrator must "resolve" damages or, what that provision means in the context of the LPA and the DUAA.  For that, the court must await additional input from the parties and, perhaps, the Arbitrator.[64]  What is clear, and is ripe for decision, is whether the Interim Partial Award can be confirmed or vacated.  It cannot.

The Interim Partial Award expressly states that the award is not final and that there are open issues for further litigation beyond resolving damages.  The Arbitrator wrote:

> This Interim Partial Award is not intended to be, and it does not constitute, the Arbitrator's "Final Award" in this Arbitration.  The Arbitrator instead retains jurisdiction to decide, in a subsequent proceeding or proceedings in this Arbitration when scheduled at an appropriate future time, any remaining issues subject to arbitration under the Limited Partnership Agreement, including but not limited to the still open and undecided issues of prevailing party status and consequent awardable fees and costs, if any, as well as any arbitrable

---

[64] Section 16.5 provides that in the event of "any dispute . . . concerning the interpretation, validity, or performance of the [LPA]," the arbitrator has "to the fullest extent permitted by law . . . the power to grant all legal and equitable remedies . . . provided by law."

*Astrum Fund I GP, LP v. Maracci et al.*,
C.A. No. 2020-0919-PAF

*Maracci et al. v. Astrum Fund I GP, LP et al.*,
C.A. No. 2021-0078-PAF
January 27, 2022
Page 25 of 25

issues involving alter ego claims that may hereinafter be raised in this Arbitration.[65]

Because the Interim Partial Award is not a final decision of the Arbitrator, it is not an award that can be confirmed or vacated under the DUAA. *See Fidelity & Deposit*, 830 A.2d at 1231. Accordingly, the parties' competing motions for summary judgment and to dismiss as to confirming and vacating the Interim Partial Award are denied.

**IT IS SO ORDERED.**

Very truly yours,

*/s/* Paul A. Fioravanti, Jr.

Vice Chancellor

---

[65] Ex. C ¶ 11.